Pearson, J.
I fully concur in the decision overruling the cases of Trice v. Turrentine, and Waugh v. Hampton, but I trace the source of the error higher up than the Chief Justice does in the opinion delivered by him.
It may be proper to state, that when this case was before me on the Circuit, feeling bound by the authority of those two cases, I decided in favor of the defendant, but advised an appeal, for the purpose of having them reviewed, because of a clear conviction, that they were wrong, and at points with Osborne v. Cunningham, For, if, as decided in that case, the bail, who has paid the debt, has no action against a co-defendant of his principal, hovv *591 can it be, that he may resist a recover}-, unless the creditor has run a ca. sa. against such co-defendant, to the proper County, so as to force him to pay the defendant, or fly out of his County to avoid the process of law ?
The source of the error in those two cases, as I conceive, is not in the idea, that bail is but a “quasi security,” or that bail has the right to have all of the defendants before the Court, as, peradventure, one of them may have paid the debt. These are but braces, props, outposts', of the main position ; which is, that the judgment is a joint ene. Yeild this, and it follows, that the ca. sa. must be joint and must run against all the defendants ; and then; the conclusion is logical, that, as our statute requires the ca. sa. to be returned “non est inventus,” before the bail can be proceeded against, the plaintiff has no right to deprive them of this advantage by instructing the sheriff not to obey the writ, so far as one or more of the defendants are-concerned, and as to them to make an untrue return. This, it seems to me, is trifling with the forms of legal proceedings, and the officer, being commanded by the writ to take the bodies of two, ought not at the in. stance of the plaintiff falsely to return, that one is not to be found, when, in truth, he is in the County, for the purpose of throwing upon the bail a responsibility, which would not otherwise attach. It is this supposed privilege of having a ca. sa. truly returned, that induced Judge Daniel to say — bail are “quasi securities only'’ and have-a right to require that all the defendants should be brought into Court, to see if the debt has not been paid. These are legitimate corollaries and support his main position, which is based upon the foundation, that the judgment is joint. Assuming this to be true, he is warranted in the inference, that the execution must be against all of the joint defendants, by the cases cited, 1 Ray. 244, 1 Salk. SI9,2 Ray. 808 ; and it follows, that the return should be as broad as the execution, before the bail is fixed; *592 according to our statute, “it is intended that the ca. sa. should be effectual.” Finley v. Smith 2 Dev. 248. I cannot find fault with the reasoning of that learned Judge, although all the inconsistences, pointed out by the Chief Justice, follow from his conclusions. I object to the position he takes for his starting point. To that I ascribe the error.
By the English law, a judgment against two or more is joint. If one dies, the burthen is upon the others. If all die but one, he alone is liable, and. if he be insolvent, the creditor loses his debt; and so is the law as to joint obligations. Our acts of 1789 and 1797 were intended to correct this inconvenience and injustice. They provide, that allobligationsshall be joint and sewerai, and that, ifan obligor dies, the creditor may have his action against the personal representative and surviving obligor. In Smith v. Fagan, 2 Dev. 298. it is held, that these statutes apply to judgments as well as to obligations, strictly so called, and that judgments, as far as defendants are concerned,, are joint and several. The nature of judgments being-thus changed and made different from judgments in England, the authorities cited by Judge Daniel are not in point. They decide, that an execution upon a joint judgment must issue as a joint writ against all of the defendants. But, here, the judgment is joint and several, and there can be no reason, why an execution may not issue against one of the defendants, treating it as several judgment with a recital, that it issued upon a judgment against two, as on record may appear. This will preserve “the conformity” as well, and be more direct and consistent with truth, than the mode of issuing against both, with instructions not to serve it on one, which is the same, under a deceptive form, as if it only issued against one.
Although this decision would overrule several cases, besides the two alluded to — among others,. Howzer v.. *593 Dellinger, 1 Ire. 475 — yet it is, in fact, correcting but one error; the spring from which all the streams flow — that of considering judgments joint, as in England, and not as joint or several under the acts of 1789 and 1797 ; a distinction fully established by Smith v. Fagan. In that case the judgment was treated as several. The general doctrine was laid down and it was conclusively shown, that the English cases are not applicable. Unfortunately the distinction was lost sight of. The English cases were again cited and followed, which led to the results above indicated and make it now necessary to retrace our steps, at least as far as to overrule two cases, and, in my opinion, to overrule all, which flow from the same error.
Besides the case of Smith v. Fagan, the course of our legislature fully sustains the position, that judgments are several as well as joint. The act of 1823 provides, that no female shall be imprisoned for debt. It makes no provision for the case of two defendants, one of whom is a female, taking it for granted that a ca. sa. could issue against the male defendant alone, unless it was intended to screen him also. And the act of 1844 seems to be conclusive ; for it provides that no ca.sa. shall issue, unless the plaintiff makes oath, that the defendant conceals his property. No provision is made for the case of two defendants, thus taking it for granted, that a ca. sa. can be issued against one. It cannot be supposed, that it was the intention to let a fraudulent debtor go free, because he had an honest co-defendant, as to whom the oath could not be made. Nor in this case, will the shift of issuing against all, but with instructions to make a false return as to one, “serve the turn ;” for the oath is a condition precedent, and cannot be avoided by the plaintiff’s undertaking to give instructions. If the position, for which I am contending, was not correct before, it must be so since this statute. The legislature must be taken to authorise *594 a ca.sa. to issue against one defendant, as to whom the oath can be made, although there be another, as to whom it cannot be made, and against whom, for that reason, a ca. sa. cannot issue ; and yet, if the judgment be joint and the reasoning correct, that “all the defendants are a “unit” and make but one defendant,” the ca. sa. must issue against all or none. The late statute, which provides that a want of conformity between the judgment and the. execution shall not vitiate, is no slight indication of the legislative will.
It is said, this w'ill make it necessary to overrule the cases of Hicks v. Gilliam, 4 Dev. 217, McIlwaine v. Jones, 4 Dev. & Bat. 154, and all of that class, in W'hich it is held, that one defendant cannot appeal, unless his co-defendants join. True ! they all flow from the same fountain. There is no better reason for overruling those of one class than of the other. All are based upon the same error, and, that being detected, it is wiser to take a “fresh start” than to embarrass the law by attempting to sustain some of the cases by making “distinctions” “too fine for use.” The process of reasoning in those cases is short and conclusive (admitting the premises) — a judgment is joint — therefore all of the defendants are a unit and make but one — and all must appeal or none — the judgment cannot be treated'as several, which would be the effect of allowing one to appeal without all, and, to close the argument by authority, it is added, it is well settled in England, that all the defendants must join in a writ of error, otherwise the Court.will quash. 2 Term. Rep. 736, 3 Bun. 1789, 1 Wilson 88. If, after error brought by one of several defendants in the names of all, the others re* fuse to join in the assignment of error, they w^ho refuse must be summoned and severed. Cro. Eliz. 891, Cro. James 94, 1 Arch. P. R. B. 232.
Thus it will be seen, that the conclusion, that all of the defendants must join in an appeal, is deduced from the *595 English cases as to writs of error, which are founded upon the idea, that the judgment is joint.
In England the defendants, who refuse to join in assignment of error, may be summoned and severed. Here, there is no provision of the kind as to appeals, and a defendant is left without remedy, if his co defendant refuses to join; so that, notwithstanding the acts of 1789 and 1797, which were intended to do away with the hardships and absurdities growing out of the doctrine of joint obligations, joint judgments, and survivorships, defendants are really in a worse condition than they are in England, where there has been no such salutary and wise legislation.